## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| ADONAY LARA | ) | |
| *Plaintiff* | ) | Case No. 03 L 2447 |
| vs. | ) | |
| | ) | Calendar Q |
| CHASE BANK USA N.A., | ) | |
| ALLIED INTERSTATE, INC., | ) | Honorable Judge Barbara J. Disco |
| *Defendants* | ) | |
| | ) | **JURY TRIAL DEMANDED** |

### *THIRD VERIFIED COMPLAINT AT LAW*

1.     NOW COMES, the plaintiff, ADONAY LARA, (henceforth "Plaintiff") brings this action against two defendants, the first defendant, CHASE BANK USA NATIONAL ASSOCIATION (henceforth "CHASE" or "Defendant"), (formally known as: *Bank One, Delaware, National Association*, First USA Bank, Bank One, and First Chicago Bank,) and the second defendant, ALLIED INTERSTATE, INC., (henceforth "ALLIED" or "Defendant"), for the counts stated herein, Plaintiff under oath states and alleges as follows:

### JURISDICTION & VENUE

2.     Pursuant to Article VI, Section 9 of the (1970) Constitution of the State of Illinois, Circuit Courts have "original jurisdiction over all justiciable matters" with only limited exceptions. (Ill. Const. 1970, art. VI, § 9.). The jurisdiction of the Court is invoked as authorized under the Illinois Constitution, statutory law, and common law. Venue is proper in this County and Circuit Court because all parties reside in the same State, in the County of Cook and/or all the acts, events and/or omissions giving rise to the claims asserted herein occurred within the County of Cook.

### PARTIES

3.     Plaintiff, ADONAY LARA, is and was at all relevant times hereto, a citizen of the United States, a resident of Cook County, Illinois, and a *"consumer"* within the meaning of the Collection Agency Act (225 ILCS 425/), and/or Consumer Fraud and Deceptive Practice Act (815 ILCS 505/1(e)) (henceforth "Consumer Fraud Act"). Plaintiff's mailing address is 211 S. Clark Street, P.O. Box 1621, Chicago Illinois, 60690.

4.     At all relevant times hereto, Defendants' *registered agent* in the State of Illinois, is the following corporation: *C.T. Corporation System*, located at 208 South LaSalle Street, in Chicago, Illinois 60602.

5.     At all relevant times hereto, defendant, CHASE is a business corporations, association, or entity, which engaged and engages in *"trade"* and *"comers"* as define under the paragraph (f) of §1 of the Consumer Fraud Act (815 ILCS 505/1(f)), in Illinois. Further, CHASE in its normal course of trade, comers, or business has made false representation of material facts to Plaintiff in reference to two consumer debts (the DEBTS), which were substituted and fully extinguished by new obligations, mutually agreed by CHASE and Plaintiff, under the *Superseding Contract*. Further, without any

2

Exhibit "A"

legal justification or valid reason, CHASE repeatedly attempted to collect from Plaintiff the DEBTS and even hired numerous other Collection Agencies (which include but are not limited to the following: *Creditors Interchange, Inc.*; *ALLIED*; *Academy Collection Service, Inc.*; *National Recovery Center, Inc.*; and *FMA Alliance, Ltd.*) to also collect or attempt to collect on the same fully extinguished consumer debts (the DEBTS).

6.    At all relevant times hereto, defendant, ALLIED was and is a business corporations or entity licensed as a *Collection Agency* under the Illinois Collection Agency Act (225 ILCS 425/_) that for compensation, either contingent or otherwise, or for other valuable consideration, offers services to collect an alleged delinquent debt.  Further, the *Division of Professional Regulation* (henceforth "Department"), which is the regulatory body for Collection Agencies in Illinois, has assigned ALLIED the following license number: 017-001393 since about 11-2-95, the same license, may expire on 5-31-06, according to the Department's records.

## FACTS UPON WHICH CLAIMS ARE BASED

7.    The private causes of action further illustrated in the pertinent *Counts* herein, arise mainly from the tortious conduct, deceptive practices, unlawful collection practices, *extreme* and *outrageous* conduct (see ¶54), engaged in, by both Defendants (their corresponding employees and agents) against Plaintiff, with malicious or willful intent to injure Plaintiff.  Further, arise secondarily from the breach of the *Superseding Contract*, (see Exhibit #1 and Exhibit #2).

8.    At all times relevant hereto, CHASE's employees, representatives, and/or agents, individually and collectively were acting within the course and scope of their employment with CHASE.  Further, at all times relevant hereto, Plaintiff always acted in good faith when dealing with Defendants, and materially relied on Defendants representations to his detriment.

9.    In essence, for purposes of this action, it is deemed that Plaintiff opened two credit-card accounts together with their respective credit cards with CHASE.  Further, Plaintiff incorporates or realleges, all the pertinent facts from ¶63 and ¶64, as if fully set forth herein.  Further, on or about 1996, Plaintiff received a credit card (henceforth 1st-Credit-Card") from CHASE, which had the following credit-card account number: 4266-8599-7033-2672 (henceforth "*1st-Account*").  Further, on or about 1997, Plaintiff received a credit card (henceforth 2nd-Credit-Card") from CHASE, which had the following credit-card account number: 4366-1110-1166-3841 (henceforth "*2nd-Account*").

10.    On or about 1996, when Plaintiff received the 1st-Credit-Card, it came in a small envelope, which lacked a copy of a document titled the "Card Member Agreement" (henceforth "CMA") (see ¶57, ¶58, and ¶59).  Further, in fact, Plaintiff saw no agreement of any kind attached therein.  Further, also on or about 1997, when Plaintiff received the 2nd-Credit-Card, it also came in a small

3

envelope, which lacked a copy of the CMA. Further, in fact, Plaintiff also saw no agreement of any kind attached therein.

11.    When CHASE mailed to Plaintiff both the 1st-Credit-Card, and the 2nd-Credit-Card, (henceforth "*Credit-Cards*"), CHASE or its employees neglected or failed to include therein the CMA and/or any type of agreement.

12.    Plaintiff opened a personal checking account with CHASE. Further, Plaintiff deposited money in said checking account. At all times relevant hereto, Plaintiff had more than sufficient funds or money in his aforesaid checking account, to fully cover any or all checks he wrote to CHASE.

13.    Some debts were incurred or charges were made, accessed, and/or accumulated in the *Credit-Cards* or both the *1st-Account* and the *2nd-Account* (henceforth "*Accounts*"). Plaintiff attempted to always make timely and regular payments to CHASE on both of his *Credit-Cards* or the *Accounts*.

14.    Plaintiff made a check payable to CHASE, in payment of one or more of the *Credit-Cards* or the *Accounts*. Shortly thereafter, CHASE received the payments, knew or should have known that Plaintiff had sufficient funds in the checking account, however, CHASE, without any valid reason or worthwhile purpose, (wrongfully) retuned the check to Plaintiff for non-sufficient funds and later also failed to processes Plaintiff's payments on time, and charged Plaintiff several late fees and increased Plaintiff's interest rate (APR) in reference to one or more of the *Accounts*. Plaintiff immediately disputed CHASE's wrongful or unlawful actions and frivolous claims, to no avail.

15.    CHASE in order to charge additional late payment fees and increase the interest rates (APR) to its customers, which at the time in question, included Plaintiff, CHASE or some of its employees engaged in the practice or custom of receiving, timely credit-card payments from Plaintiff, several consumers, and/or consumers, and willfully withholding said credit-card payments for several days before Chase would apply such payments to the pertinent customers' accounts.

16.    At some point in 1999, CHASE claimed that Plaintiff became delinquent in reference to the *Credit-Cards* or the *Accounts*. Plaintiff in good faith, immediately and repeatedly explicitly denied and/or disputed CHASE's aforesaid allegations and the amount CHASE claimed Plaintiff owed it in reference to the *Credit-Cards* or the *Accounts*.

17.    On or about November of 2000, CHASE claimed: (i) that Plaintiff became delinquent in reference to the *Accounts*; (ii) that Plaintiff allegedly accumulated a debt in the sum of about $7,000.00 (henceforth "1st-Debt"), in reference to the *1st-Account* (credit-card account #: 4266-8599-

7033-2672); (iii) that Plaintiff allegedly accumulated a debt in the sum of about $800 in (henceforth "2nd-Debt"), reference to the *2nd-Account* (credit-card account #: 4366-1110-1166-3841).

18.    At all times relevant hereto, Plaintiff repeatedly notified CHASE that Plaintiff in good faith: (i) disputed the amount alleged owed by Plaintiff to CHASE in reference to the *Accounts* or the 1st-Debt and 2nd-Debt (henceforth "DEBTS"); (ii) disputed the validity of the DEBTS; (iii) disputed Plaintiff's alleged delinquency in reference to the *Accounts*; (iv) challenged the deceptive conduct engaged by CHASE in wrongfully withholding credit-card payments from Plaintiff just to continue to increase Plaintiff's APR and charge him additional fees; (v) attempted to settle the DEBTS with CHASE and/or resolve the matter in an amicable way if possible.

19.    At all times relevant hereto, since about November of 2000 (if not well prior to said date) Plaintiff neither made charges nor authorized any person to make any charge in reference to the *Accounts*. Further, the DEBTS were *unsecured* debts (consumer, credit-card debts which were *unliquidated* debts (subject to good faith dispute)), which could have been fully discharged by Plaintiff, if he exercised his right to file a bankruptcy petition with the pertinent Bankruptcy Court, under Chapter 7 of the United States Bankruptcy Code.

20.    On or about November of 2000, Plaintiff advised CHASE that he was seriously contemplating filing Chapter 7 bankruptcy protection, because Plaintiff was going through serious financial hardship that was overwhelming him.

21.    As described in more detail below, on or about November of 2000, CHASE and Plaintiff freely and voluntarily, entered into a new, valid contract or oral agreement (henceforth "*Superseding Contract*") by and between CHASE and Plaintiff, which imposed new obligations upon both Plaintiff and CHASE, and fully and forever discharged, terminated, abolished, or extinguished any and all prior obligations and agreements that could have existed between Plaintiff and CHASE in reference to the *Accounts* or the DEBTS.

22.    On or about November of 2000, in reference to the *Accounts* or the DEBTS, CHASE initiated bargaining with Plaintiff. CHASE called Plaintiff on the telephone, made propositions, offers, material representations, and promises to Plaintiff, in reference to the *Accounts* or the DEBTS. Shortly thereafter, Plaintiff and CHASE attained or reached a full and mutual meeting of the minds or accords, by and between Plaintiff and CHASE, in reference to the *Accounts* or the DEBTS. Further, mutual promises were exchanged by and between CHASE and Plaintiff, which sufficiency and value of such were acknowledged by and between CHASE and Plaintiff. Further,

at all times relevant hereto, by virtue of the conduct, above mentioned, CHASE and Plaintiff have entered into the *Superseding Contract.*

23.    At all times relevant hereto, the new duties or obligations imposed to both CHASE and Plaintiff, by or under the *Superseding Contract* are based on the aforesaid promises and convents reached and agreed by and between CHASE and Plaintiff in their aforesaid negotiations.

24.    The *Superseding Contract* imposed the following duties upon Plaintiff or required Plaintiff: (a) to immediately or as soon as reasonably possible, abstain from exercising Plaintiff's right to file a bankruptcy petition with the pertinent Bankruptcy Court, under Chapter 7 of the United States Bankruptcy Code, or otherwise seek bankruptcy protection in reference to the DEBTS; (b) to mail two payments to CHASE in reference to the *Accounts* or the DEBTS by or before 12-8-00. The first payment for the sum of $767.03, in full satisfaction, claim, demand, and obligation of the 1st-Debt (credit-card account number: 4266-8599-7033-2672), and the second payment for the sum of $230.43, in full satisfaction, claim, demand, and obligation of the 2nd-Debt (credit-card account number: 436-1110-1166-3841); (c) to make the aforesaid payments payable to CHASE (First USA and/or Bank One); (d) to address any correspondence to the *Vice-president of Settlements at the Division of Settlements* at P.O. Box 15548, Wilmington DE, 19886; (e) to mail the aforesaid payments to CHASE (First USA and/or Bank One), at P.O. Box 15548, Wilmington DE, 19886.

25.    At all relevant times hereto, CHASE and Plaintiff mutually and fully acknowledged, and agreed, that for purposes of the *Superseding Contract*, the term or word "***adverse action***" shall be construed as broadly as possible, in order to afford Plaintiff the maximum protection allowed by law.

26.    The *Superseding Contract* imposed the following duties upon CHASE or required CHASE: (a) to immediately or as soon as reasonably possible, and forever, fully discharged, terminated, abolished, or extinguished both: (i) any and all prior obligations, which Plaintiff owed or could have owed to CHASE in reference to the *Accounts* or the DEBTS; and (ii) any and all agreements that existed or could have existed by and between Plaintiff and CHASE in reference to the *Accounts* or the DEBTS; (b) to immediately or as soon as reasonably possible, and forever, individually or collectively, cease and desist, and/or abstain: (i) from engaging in any conduct that could be adverse to Plaintiff, in connection with the *Accounts* or the DEBTS; or (ii) from taking any "*adverse action*" against Plaintiff, in reference to the *Accounts* or the DEBTS; (c) to immediately or as soon as reasonably possible, and forever, cause the removal and/or *deletion*, of any and all information, data, etc., maintained or reported or disseminated or propounded or published or furnished to any Consumer

Reporting Agency (henceforth "CRA") or person, by or through CHASE, its affiliates, and/or agents, in reference to the DEBTS and/or Plaintiff, which in any manner tended to adversely affect Plaintiff and/or his credit-wordiness and credit-standing, etc.; (d) to immediately or as soon as reasonably possible, and thereafter, acknowledge, report and/or furnish to any Consumer Reporting Agency and/or other pertinent person, that Plaintiff in reference to the *Accounts* or the DEBTS has always been current, up to date, and in good standing; (e) to immediately or as soon as reasonably possible, deposit, endorse, cash, or otherwise commenced the process for payment of the aforesaid firmly affixed checks numbered 5051 and 5052. Further, also close the *Accounts* at customer's request.

27.    On or about November of 2000, Plaintiff immediately abstained from exercising his right to file a bankruptcy petition with the pertinent Bankruptcy Court, under Chapter 7 of the United States Bankruptcy Code, or otherwise seek bankruptcy protection in reference to the DEBTS.

28.    At all times relevant hereto, Plaintiff desired to avoid any misunderstandings in the future, and have some record of what CHASE and Plaintiff mutually agreed upon, when they entered into the *Superseding Contract*. Further, in furtherance of the aforesaid goal, despite Plaintiff's limited resources and legal knowledge, Plaintiff drafted two correspondences and firmly affixed or attached the same to each particular payment or check, made pursuant the *Superseding Contract*. Further, the language in the two aforesaid correspondences were, at the time in question, Plaintiff's best attempt to faithfully reiterate, transcribe, memorialize, or illustrate, the aforesaid agreements reached by and between CHASE and Plaintiff in the *Superseding Contract*.

29.    On or about 12-1-00, Plaintiff stapled or firmly affixed his check numbered 5051, payable to CHASE in the sum of $767.03, onto the face of a correspondence, attached herein as **Exhibits #1**. Further, the aforesaid correspondence, **Exhibits #1**, memorialized and/or faithfully reiterated, transcribed, or illustrated, the aforesaid new agreements reached and entered by and between CHASE and Plaintiff under the *Superseding Contracts*. Further, Plaintiff mailed to CHASE and/or *Vice-president of Settlements at the Division of Settlements* at P.O. Box 15548, Wilmington DE, 19886, the aforesaid correspondence, **Exhibits #1**, which on its upper right corner had the check numbered 5051, firmly affixed to it.

30.    On or about 12-1-00, Plaintiff also stapled or firmly affixed his check numbered 5052, payable to CHASE in the sum of $230.43, onto the face of a correspondence, attached herein as **Exhibits #2**. Further, the aforesaid correspondence, **Exhibits #2**, also memorialized and/or faithfully reiterated, transcribed, or illustrated, the aforesaid new agreements reached and entered by and

between CHASE and Plaintiff under the *Superseding Contracts*. Further, Plaintiff also mailed to CHASE and/or *Vice-president of Settlements at the Division of Settlements* at P.O. Box 15548, Wilmington DE, 19886, the aforesaid correspondence, **Exhibits #2**, which on its upper right corner also had the check numbered 5052, firmly affixed to it.

31.    On 12-4-00, via certified mail, CHASE received and accepted both of the aforesaid correspondences, **Exhibit #1** and **Exhibit #2**, at P.O. Box 15548, Wilmington DE, 19886. Further, CHASE's representative(s) signed the return receipts, attached herein as **Exhibit #3** and **Exhibit 4**.

32.    On 12-4-00, CHASE detached or removed numerous staples from the upper right corner of the aforesaid correspondence, **Exhibit #2**, in order to release the firmly affixed check numbered 5052, which CHASE later endorsed and/or otherwise commenced the process for payment. In fact, shortly thereafter, on or about 12-6-00, CHASE obtained payment of the now detached check numbered 5052, attached herein as **Exhibit #5**.

33.    Since 12-4-00 to the present, CHASE has retained the aforesaid check numbered 5051, without repudiating and/or returning it back to Plaintiff.

34.    As described in more detail above, since about November of 2000, or 12-4-00, by virtue of the *Superseding Contract* and/or the repeated and numerous oral and written communication by and between CHASE and Plaintiff, at all times relevant hereto, CHASE knew or should have known: (i) that on or about November of 2000, CHASE and Plaintiff negotiated, CHASE made an offer to Plaintiff, Plaintiff accepted said offer, CHASE and Plaintiff mutually agreed to a new contract (the *Superseding Contract*) or a new meeting of the mines were attained by and between CHASE and Plaintiff. Further, Plaintiff memorialized or illustrated said offer or the agreed terms under the *Superseding Contract* in the correspondences, **Exhibit #1** and **Exhibit #2**, which the same together with two payments were received and accepted by CHASE on 12-4-00;  (ii) that the *Superseding Contract* is a valid contract which has been memorialized or illustrated in the correspondences, **Exhibit #1** and **Exhibit #2**.;  (iii) that since about November of 2000, or 12-4-00, Plaintiff owed no money to CHASE, in reference to the *Accounts* and/or the DEBTS; (iv) that Plaintiff provided new and valuable consideration to CHASE (see ¶22, ¶27, ¶29, and ¶30) in support of the *Superseding Contract*;  (v) that the DEBTS, in fact, were old or previous debts that were substituted and fully extinguished for new obligations, which CHASE and Plaintiff willfully and mutually agreed to;  (vi) that any contract or agreement, which existed or could have existed in reference to the *Accounts* and/or the DEBTS prior to about November of 2000, by and between CHASE and Plaintiff, were old

8

or previous contracts that were substituted and fully extinguished for the new obligations, and/or the NOVATION effect of the *Superseding Contract*, which CHASE and Plaintiff willfully and mutually agreed to;  (vii) that since about November of 2000, or 12-4-00, CHASE and its agents, individually and collectively, are legally and contractually barred from engaging in any *adverse action* against Plaintiff (see ¶25 and¶26 ) or attempting to engage in any *adverse action* against Plaintiff;  (viii) that by virtue of the *Superseding Contract* CHASE had no good reason nor worthwhile purpose, nor legal justification to have its employees or agents, and Collection Agencies attempt to collect on the *Accounts* and/or the DEBTS from Plaintiff;  (ix) that by virtue of the *Common Law* and enactment of public policies, and/or statues by the General Assembly, CHASE had no good reason nor worthwhile purpose, nor legal justification to have its employees or agents, and Collection Agencies, repeatedly engaged in *extreme* and *outrageous* (see ¶55) conduct against Plaintiff, and/or in conduct that has been made unlawful under § 9 of the Collection Agency Act, (225 ILCS 425/9);  (x) that by virtue of the *Common Law* and enactment of public policies, and/or statues by the General Assembly, CHASE had no good reason nor worthwhile purpose, nor legal justification to have its employees or agents, engage in *extreme* and *outrageous* (see ¶55) conduct against Plaintiff, and/or in conduct that cause the publication, dissemination, retention, reporting, or furnishing of false and/or defamatory information about Plaintiff to third parties and/or Consumer Reporting Agencies (see **Exhibit #7**), with malice or willful intent to injure Plaintiff.

35.    On 12-22-00, Plaintiff went to CHASE's principal place of business in Chicago, Illinois, where he was directed to CHASE's Law Department.  Plaintiff then and there in essence notified CHASE through CHASE's legal counsel, DABEER M. ROSHANALI: (i) that Plaintiff fully perform all duties for him to perform (see ¶27,¶29, and ¶30), under the *Superseding Contract*;  (ii) that CHASE had materially breached the *Superseding Contract*;  (iii) that CHASE failed to perform its duties for it to perform under the *Superseding Contract*;  (iv) that CHASE failed to, as soon as reasonably possible, deposit, endorse, cash, or otherwise commenced the process for payment of the check numbered 5051;  (v) that the retention by CHASE or its agents of the aforesaid check numbered 5051, without CHASE in good faith providing Plaintiff a valid, reasonable, and detail explication supporting CHASE's repudiating or returning the aforesaid check numbered 5051, promptly to Plaintiff, further demonstrated or confirmed or constituted the acceptance of the *Superseding Contract* as elaborated partially in both the aforesaid correspondences, **Exhibit #1** and **Exhibit #2**.

36.    Ms ROSHANALI, instructed Plaintiff to put his statements in writing. Ms ROSHANALI also promised Plaintiff that she would personally make copies of all relevant documents, and make certain to fax and forward the same to CHASE's proper departments. Further, Plaintiff immediately, complied with Ms ROSHANALI instructions, and wrote a correspondence to CHASE, attached herein as **Exhibit #6**, and submitted the same together with all pertinent documents that supported Plaintiff's position to Ms ROSHANALI.

37.    At all times relevant hereto, since about November of 2000, or 12-4-00: (i) Any liability or obligation that Plaintiff had or could have under the *Accounts* or the DEBTS, prior to about November of 2000, were fully and forever extinguished by the *Superseding Contract*; (ii)Plaintiff owed no money to CHASE; (iii)Plaintiff owed no liability of any kind to CHASE; (iv) CHASE had full knowledge of the above mentioned factual statements (see ¶37(i),(ii),(iii)).

38.    From about May of 2001 through June of 2005, Plaintiff obtained his investigative consumer reports from all major Consumer Reporting Agencies and discovered material inaccuracies, false, and/or derogatory information about Plaintiff, in reference to the *Accounts* and/or the DEBTS.

39.    On 7-18-01, and on several subsequent times thereafter until about 2006, Plaintiff mailed his reinvestigation request letters to all major Consumer Reporting Agencies, disputing the accuracy of the information in the reports, regarding Plaintiff, the *Accounts* and/or the DEBTS.

40.    From about March of 2001 through about June of 2005, over thirty separate times, CHASE, furnished, reported, disseminated, verified, caused the retention and new republication of FALSE, derogatory, and/or adverse information about Plaintiff to all major Consumer Reporting Agencies, and other individuals. The documents that show the aforesaid false information or make reference to it, are attached herein as **Exhibit #7**, and incorporated as if fully set forth herein.

41.    At all times relevant hereto, since about November of 2000, or 12-4-00, CHASE had full knowledge or reasons to know, that the information CHASE furnished and continues to furnish, about Plaintiff (see **Exhibit #7**), to Consumer Reporting Agencies, and other individuals, are materially false. Further, the proximate cause of Plaintiff's ongoing injuries is CHASE's *extreme* and *outrageous* conduct against Plaintiff.

42.    From about August of 2001 thorough about August of 2002, CHASE hired or employed numerous Collection Agencies, such as: Creditors Interchange, Inc; Defendant **ALLIED**; Academy Collection Service, Inc; National Recovery Center, Inc., ("NRC"); and FMA Alliance, Ltd., (henceforth *"Collection-Agents"*) to collect or attempt to collect from Plaintiff the DEBTS

10

which since about November of 2000, or 12-4-00, were fully discharged or extinguished by the *Superseding Contract.*

43.    At all times relevant hereto, Plaintiff *never* authorized and/or gave any consent to, ALLIED, CHASE, their agents, or any person to engage in any collection communication with Plaintiff in reference to any debt (specially not in reference to the DEBTS).

44.    At all times relevant hereto, on numerous of occasions from about 8-18-01 through about October of 2003, Plaintiff before or during, and after, each collection communication, attempted and did advise in numerous occasions (orally and some times in writing) ALLIED, the *Collection-Agents*, and CHASE, including but not limited to the following: (i) that since about November of 2000, or 12-4-00, by virtue of the *Superseding Contract* Plaintiff owed nothing to CHASE; (ii) that the DEBTS, each of the collectors attempted to collect from Plaintiff, were in fact, extinguished and illegitimate debts; (iii) that CHASE was legally and/or contractually barred from collecting or attempting to collect any portion of the DEBTS from Plaintiff; (iv) that even if the collectors unreasonably believed that the DEBTS were legitimate, Plaintiff specifically prohibit them from engaging in any collection communication with Plaintiff and that the veritable multitude of telephone calls, frequent use of profane, obscene, abusive language, shouting and railing at Plaintiff, repeated threats of ruination of his credit, good name and reputation, and accusations of dishonesty, etc., therein, was in direct violation of Federal and State laws; (v) that the collectors were calling Plaintiff at work and/or at his business line, and such communication was prohibited by Plaintiff's employer; (vi) that Plaintiff was represented by an attorney with respect to the DEBTS or *Accounts*; (vii) that the collectors are materially interring with Plaintiff's employment and causing him to suffer *extreme* and *severe* emotional distress mental anguish, etc.; (viii) that the collectors should immediately cease and desist from engaging in such conduct against Plaintiff, etc.

45.    From about August 18, 2001 through about October of 2003, both CHASE and the *Collection-Agents* while acting within the scope of their employment with CHASE, and attempted to collect on the DEBTS from Plaintiff, and both CHASE and the *Collection-Agents* individually or collectively, engaged in the following (*extreme* and *outrageous*) conduct against Plaintiff:

a) Threatened to disclose information adversely affecting Plaintiff's reputation for credit worthiness with knowledge or reasons to know that the information was false.

b) Threatened to initiate communication with Plaintiff's employer without providing the required prior written notice to Plaintiff.

c) Called Plaintiff numerous times, at all hours of the day and night, with such persistence and frequency as to constitute harassment of Plaintiff.

d) Communicated with Plaintiff in connection with the collection of said debts without the prior consent of Plaintiff given directly to the debt collector.

e) Communicated with Plaintiff in connection with the collection of said debts at a time or place which was known or should be known to be inconvenient to Plaintiff.

f) Used profane, obscene or abusive language in communicating with Plaintiff.

g) Threatened to disclose information relating to Plaintiff's false indebtedness to several other persons.

h) Disclosed, and/or threatened to disclose, information concerning the existence of said debts, which the debt collector knew to be reasonably disputed by Plaintiff, without disclosing the fact that Plaintiff disputes the aforesaid debts.

i) Engaged in conduct which intended to cause and did cause mental or physical illness or distress to Plaintiff.

j) Attempted or threatened to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist.

k) Failed to disclose to Plaintiff the corporate, partnership or proprietary name, or other trade or business name, under which the debt collector was engaging in debt collections and which he or she was legally authorized to use.

l) Misrepresented the amount of the claim or debts alleged to be owed by Plaintiff.

m) Communicated or threatened to communicate with Plaintiff when the debt collector was informed in writing by Plaintiff and his attorney that the attorney represents Plaintiff concerning the claim.

n) The collector communicated with Plaintiff when neither Plaintiff nor the attorney gave consent to do so.

o) Engaged in dishonorable, unethical, or unprofessional conduct of a character that deceived, defrauded, and harmed Plaintiff.

46.    More in particular, on 11-15-01, at or about 9:45 a.m. ALLIED's employee Taylor Rich made a telephone called to Plaintiff at Plaintiff's business line.  While in the course of his employment with ALLIED, Taylor Rich, in said telephone communication: (i) used abusive and insulting language against Plaintiff; (ii) Communicated with Plaintiff in connection with the collection of said debts without the prior consent of Plaintiff given directly to the debt collector; (iii) Communicated with Plaintiff in connection with the collection of the DEBTS at a time or place which was known or should be known to be inconvenient to Plaintiff; (iv) Engaged in conduct which intended to cause and did cause mental or physical illness or distress to Plaintiff; (v) threatened to *embarrass* Plaintiff (supposed debtor) with Plaintiff's employer; (vi) threatened to garnish Plaintiff's wages; (vii) threatened to even instigate an arrest or criminal prosecution against Plaintiff where no basis for a criminal complaint lawfully existed.

47.    From about March of 2001 through June of 2005, at all times relevant hereto, motivated by evil intent to injure Plaintiff or CHASE with malice, full knowledge, or in reckless disregard to the truth or falsity thereof, caused and/or continues to cause Equifax, Experian, Trans Union, or other Consumer Reporting Agencies, to persistently retain, disseminate, and publish false, erroneous, and derogatory information or statements about Plaintiff, in Plaintiff's consumer files or investigative consumer reports to third parties.

48.    On or about 3-21-01, Plaintiff mailed and/or delivered to CHASE the cease and desist letter, attached herein as **Exhibit #8**. On or about November 9, 2001, Plaintiff mailed another cease and desist letter, attached herein as **Exhibit #9**.

**49.**    On or about 1-21-03, Plaintiff received an offer of employment from *Asset Management Advisors, Inc.* (a subsidiary of Sanjay Asija, CPA, P.C.), who was willing to hire and pay Plaintiff a starting salary of about $65,000.00 plus other benefits.  The aforesaid employment contract, is attached as **Exhibit #10**.

50.    Plaintiff has suffer the lost of the prospective employment with *Asset Management Advisors, Inc.*, as proximate cause of CHASE's conduct of repeatedly furnishing or reporting false erroneous, and/or derogatory (credit history) information, about Plaintiff in reference to the Accounts or the DEBTS, to the Consumer Reporting Agencies, and/or *Asset Management Advisors, Inc.*

51.    On or about 1-27-03, *Asset Management Advisors, Inc.*, mailed to Plaintiff a correspondence or a rejection letter, attached herein as **Exhibit #11**.  Further, shortly thereafter, Plaintiff spoke with *Asset Management Advisors, Inc.*, and attempted to persuade them to reconsider.  *Asset Management Advisors, Inc.*, told Plaintiff that if it received an updated credit-report (referring to Plaintiff's consumer report) within 45 days, from the credit-bureau (Consumer Reporting Agencies) showing that the derogatory information furnished in the report was removed, then it would hire Plaintiff.

52.    Plaintiff diligently wrote a correspondence to CHASE and therein Plaintiff advised CHASE: (i) that as proximate cause of CHASE's extreme and outrageous conduct against Plaintiff, the numerous and persistent furnishing or reporting of false, erroneous, and/or derogatory information, about Plaintiff in reference to the Accounts or the DEBTS, to the Consumer Reporting Agencies, and/or *Asset Management Advisors, Inc.*, Plaintiff has suffer the lost of the prospective employment with *Asset Management Advisors, Inc.*;  (ii) that Plaintiff received the correspondence or rejection letter, **Exhibit #11**, from *Asset Management Advisors, Inc.*;  (iii) that the injury could be mitigated if CHASE deleted from Plaintiff's consumer file the false, erroneous, and/or derogatory information, about Plaintiff, in reference to the Accounts or the DEBTS;  (iv) that if CHASE failed to delete the false information and provide Plaintiff with prove thereof by 2-20-01, Plaintiff would be forced to take legal action against CHASE.

53.    On or about 2-27-03, Plaintiff file a legal action against CHASE.

**54.**    At all times relevant hereto, the ***extreme*** and ***outrageous*** conduct alleged to be committed by CHASE and its agents, without any legal justification, good reason or worthwhile purpose,

13

included but are not limited to the following: (i) the furnishing, of false information in Plaintiff's Consumer File or Consumer Report (credit report) to third parties and/or Consumer Reporting Agencies, illustrated in **Exhibit #7,** which the same is incorporated as if fully set forth herein, was made by CHASE and its agents with willful or malicious intent to injure Plaintiff, or motivated by deliberate or evil intent to injure Plaintiff and his good name and reputation, etc.; (ii) the veritable multitude of telephone calls, frequent use of profane, obscene, abusive language, shouting and railing at Plaintiff, repeated threats of arrest and ruination of his credit, good name and reputation, and accusations of dishonesty, etc., therein; (iii) the threats to embarrass Plaintiff (the purported debtor, that in fact, owed no debt to CHASE) with his employer, to garnish Plaintiff's wages, put Plaintiff in jail, etc.; (iv) the unwarranted repeated communication with Plaintiff at his Please of employment and/or business line, etc.; (v) the unlawful collection practices engaged by CHASE and its agents, see paragraphs 45 and 46, which are incorporated as if fully set forth herein.

55.    At all time relevant hereto, Plaintiff has suffered *extreme* and *severe* personal (emotional, and physical) injury damages, such as: (i) emotional distress; (ii) mental anguish; (iii) stress; (iv) anger; (v) embarrassment; (vi) shame; (vii) fright; (viii) worry; (ix) nausea; (x) insomnia; (xi) back pain; (xii) head pain; (xiii) stomach pain; (xiv) physical stress; (xv) loss of concentration; (xvi) loss of 20 pounds in body weight; (xvii) loss of mental peace, quiet, and tranquility, etc. (henceforth *"personal injury damages"*).  Further, Plaintiff has also suffered economic damages, such as: (i) interruption or interference with Plaintiff's employment; (ii) interruption or interference with Plaintiff's business, academic and social opportunities; (iii) loss of Plaintiff's prospective employment and/or difficulty getting new employment; (iv) loss Plaintiff's valuable time; (v) loss of Plaintiff's good credit standing , name, reputation, and personal standing, etc. (henceforth *"economic damages"*).

56.    As described in more detailed above, at all time relevant hereto, the proximate cause of Plaintiff aforesaid suffering *personal injury damages* and *economic damages* (see ¶55) is the Defendants' aforesaid *extreme* and *outrageous* conduct against Plaintiff, Defendants' willful or malevolent or oppressive intent to injure Plaintiff, deprive Plaintiff of his rights protected under the laws of Illinois and the United States, and Defendants' callous indifference to the protected rights of Plaintiff, as described in more detailed above.

57.    On or about 6-27-03, CHASE's counsel, Marcie M. Martinez, filed a motion to dismiss Plaintiff's complaint together with a copy of the CMA (see ¶10) (CHASE's Exhibit A). Further, on

or about 6-30-03, CHASE and/or Ms Martinez mailed said motion to dismiss to Plaintiff. Shortly thereafter, for the very first time, Plaintiff ever received a copy of the CMA from CHASE.

58.   At all times relevant hereto, Ms Martinez, in said motion to dismiss, without possessing any personal knowledge of the truth or falsity thereof, Ms Martinez, alleged that her client CHASE has delivered the CMA to Plaintiff together with the *Credit-Cards*. Plaintiff demanded Ms Martinez and CHASE to show firm prove thereof, however, Ms Martinez and CHASE, to this date (2006), have never provided any competent evidence to support the aforesaid claim.

59.   The CMA, is attached as *Exhibit #12*, only for the following purpose: (i) to indulge the court; and/or (ii) to demonstrate, that the CMA, even if it could be construed to have been delivered to Plaintiff, has no provisions or language therein, which in any manner, as a mater of fact or law, could have precluded, Plaintiff and CHASE from willfully having substituted any (old or previous) agreement or obligation which either existed or could have existed by and between CHASE and Plaintiff, in reference to the *Accounts* and/or the DEBTS, prior to about November of 2000, with a new one, such as, the *Superseding Contract*, which in fact, has fully and forever extinguished any (old) agreement together with any obligations that existed or could have existed, in reference to the *Accounts* and/or the DEBTS, prior to about November of 2000.

60.   On or about July 2003, by virtue of the communication by and between Plaintiff and Ms Martinez, Plaintiff discovered or finally realized: (i) that CHASE entered into *Superseding Contract*, in bad faith; (ii) that CHASE never intended to honor or perform any of its promises, duties, or contractual obligations owed to Plaintiff, under the *Superseding Contract* (see Exhibit #1 and Exhibit #2); (iii) that CHASE made materially false representation to Plaintiff, which CHASE intended for Plaintiff to act on, and/or materially rely on the deception; (iv) that the *extreme* and *outrageous* conduct alleged to be committed by CHASE, illustrated in more detail above, was made by CHASE and its agents with willful or malicious intent to injure Plaintiff, or motivated by deliberate or evil intent to injure Plaintiff and his good name and reputation, etc.

## COUNT I
### (Novation)

61.   Plaintiff incorporates, or realleges, any and all pertinent facts or allegations in paragraphs 1 through 123 as if fully set forth herein.

62.   For convenience of the court, Plaintiff has quoted verbatim the promulgated definition of Novation:

> " **Novation is the substitution of a new debt or obligation for an existing one, which is thereby extinguished.** *Kroll v. Sugar Supply Corp.*, 116 Ill.App.3d 969, 975, 452 N.E.2d 649, 653, 72 Ill.Dec. 396 (1983). The elements of novation are: (1) a previous valid obligation; (2) a subsequent agreement by all of the parties to the new contract; (3) the extinguishment of the old contract; and (4) the validity of [***184] [*989] the new contract. *Aluminum Co. of America v. Home Can Manufacturing Corp.*, 134 Ill.App.3d 676, 682, 480 N.E.2d 1243, 1248, 89

Ill.Dec. 500 (1985)." (Emphasis added.) *First Midwest Bank v. Thunder Rd., Inc.*, 834 N.E.2d 987 _ (3d. Dis. 2005).

63.    At all times relevant hereto, prior to about November of 2000, the *1st-Account* and/or the 1st-Debt had no written or mutually signed agreement by and between both CHASE and Plaintiff (henceforth *"Parties"*), however, on or about 1996 there was a credit-card agreements of some sort (henceforth *"Previous-1st-Agreement"*), entered by and between the *Parties*, which did not include the CMA, nor any contract, agreement of any kind, which expressly, implied or otherwise, in any manner restricting the *Parties* ability to enter into a new superseding contract or agreement by and between the *Parties*, and which extinguished the *Previous-1st-Agreement* or any other contract that could have existed by and between the *Parties*.

64.    At all times relevant hereto, prior to about November of 2000, the *2nd-Account* and/or the 2nd-Debt had no written or mutually signed agreement by and between both CHASE and Plaintiff (henceforth *"Parties"*), however, on or about 1997 there was a credit-card agreements of some sort (henceforth *"Previous-2nd-Agreement"*), entered by and between the *Parties*, which did not include the CMA, nor any contract, agreement of any kind, which expressly, implied or otherwise, in any manner restricting the *Parties* ability to enter into a new superseding contract or agreement by and between the *Parties*, and which extinguished the *Previous-2nd-Agreement* or any other contract that could have existed by and between the *Parties*.

65.    Plaintiff had only two pervious obligations with CHASE, which were the DEBTS (see ¶17).

66.    CHASE and Plaintiff constituted all of the parties to both the *Previous-1st-Agreement* and *Previous-2nd-Agreement* (henceforth "Old-Agreements"), and the *Superseding Contract* (new contract or subsequent agreement).

67.    As described more fully above, CHASE, on or about November of 2000, or 12-4-00, CHASE and Plaintiff entered into the *Superseding Contract*, which has been memorialized or illustrated in the correspondences, **Exhibit #1** and **Exhibit #2**.

68.    On or about November of 2000, the Old-Agreements and the DEBTS were substituted and fully extinguished for new obligations, which CHASE and Plaintiff willfully and mutually agreed to, under the *Superseding Contract*. Further, in fact, the Old-Agreements or any contract or agreement, debts and obligations, which existed or could have existed in reference to the *Accounts* and/or the DEBTS prior to about November of 2000, by and between CHASE and Plaintiff, were old or previous contracts or obligations, that were substituted and fully and forever extinguished for the

16

new obligations, and/or the NOVATION effect of the *Superseding Contract*, which CHASE and Plaintiff willfully and mutually agreed to.

**69.**    The *Superseding Contract* is a valid contract, because it has all the necessary elements required by law.

**70.**    At all times relevant hereto: (i) CHASE and Plaintiff negotiated, CHASE made an offer to Plaintiff, and shortly thereafter Plaintiff accepted said offer and CHASE and Plaintiff mutually agreed to a new contract, such as: the *Superseding Contract* or a new meeting of the mines were attained by and between CHASE and Plaintiff; (ii) Plaintiff provided new and valuable consideration to CHASE (see ¶ 22, ¶27, ¶29, and ¶ 30,) in support of the *Superseding Contract*; (iii) all the parties to the *Superseding Contract* were of sufficient age and competent to enter into the same, at the time in question; (iv) the *Superseding Contract* does not contravene public policy of the State of Illinois or of the United States.

**71.**    WHEREFORE, Plaintiff, ADONAY LARA prays that this Honorable Court enter a judgment in favor of Plaintiff and against the CHASE for:
> (1) The relief prayed in Paragraph 77 (subsections 1-9), which Plaintiff incorporates or realleges as if fully set forth herein;
> (2) Litigation expenses and cost of suit, and reasonable attorneys' fees;
> (3) Such other or further relief to Plaintiff as this Court may deem just and equitable.

## COUNT II
### (Breach of Contract)

**72.**    Plaintiff incorporates, or realleges, any and all pertinent facts or allegations in paragraphs 1 through 73, as if fully set forth herein.

**73.**    As described more fully above, CHASE, on or about November of 2000, or 12-4-00, CHASE and Plaintiff entered into a valid contract, the *Superseding Contract*, which has been memorialized or illustrated in the correspondences, **Exhibit #1 and Exhibit #2**.

**74.**    Plaintiff fully performed all duties for him to perform under the *Superseding Contract*.

**75.**    CHASE willfully breached the *Superseding Contract* by failing to cease and desist from engaging in *adverse action* against Plaintiff. In fact, each and every derogatory information furnished by CHASE in Plaintiff's consumer file or credit report, illustrated in **Exhibit #7,** which the same is incorporated as if fully set forth herein, is a separate breach of the *Superseding Contract*. Further, also each and every collection telephone call either made by CHASE or any of its agents, also constitutes a separate breach of the *Superseding Contract*.

17

76.    As proximate cause of CHASES aforesaid breaches of *Superseding Contract*, and the unlawful conduct, extreme and outrageous conduct against Plaintiff, Plaintiff has suffered both extreme and severe *personal injury damages*, and also suffered *economic damages*. (See ¶54, ¶55, and ¶56).

77.    WHEREFORE, Plaintiff, ADONAY LARA prays that this Honorable Court enter a judgment in favor of Plaintiff and against the CHASE for:

(1) A declaration or finding, that the *Superseding Contract* is a valid and enforceable contract;

(2) A declaration or finding, that the *Superseding Contract* has fully and forever extinguished the DEBTS, and/or any agreement or obligation that existed or could have existed by and between CHASE and Plaintiff prior to about November of 2000;

(3) A declaration or finding, that the terms, obligations, and mutual agreements, elaborated in paragraphs 24, 25, 26, and in Exhibits #1, and #2, of the *Third Verified Amended Complaint at Law*, relating to the *Superseding Contract*, are true and accurate and must be followed by the parties of the *Superseding Contract*;

(4) An Order, which compels CHASE, to immediately or as reasonably possible, fully perform all duties for CHASE to perform under the *Superseding Contract*, [including but not limited to: the permanent deleting all adverse, derogatory information about Plaintiff relating to the *Accounts* and/or DEBTS (credit card accounts 4266-8599-7033-2672 and 4366-1110-1166-3841), from its records and all consumer reporting agencies or other places of credit publication, within 2 weeks of the entry of this court's judgment in the above entitled case], as elaborated in paragraph 26, Exhibit #1, and Exhibit #2 of the *Third Verified Amended Complaint at Law*;

(5) An Order, which compels CHASE, to immediately or as reasonably possible, pay Plaintiff $300 per day, plus reasonable attorney fees and court cost, for any and each instance of non compliance with the above terms or the *Superseding Contract*;

(6) Compensatory economic damages in excess of $ 750,000 and/or in the amount later to be determined by the Jury;

(7) Compensatory personal injury damages in excess of $ 500,000 and/or in the amount later to be determined by the Jury;

(8) Litigation expenses and cost of suit, and reasonable attorneys' fees;

(9) Such other or further relief to Plaintiff as this Court may deem just and equitable.

## COUNT III
### (Defamation and False Light)

78.    Plaintiff incorporates, or realleges, any and all pertinent facts or allegations in paragraphs 1 through *143*, as if fully set forth herein.

79.    All the pertinent information including the false and defamatory statements, illustrated in **Exhibit 7**, are incorporated, as if fully set forth herein.

80.    As described more fully above, from about March of 2001 through about June of 2005, Defendant CHASE knew or had reasons to know of the falsity within the adverse statements or information found in **Exhibit 7**, each of which constitutes a separate instance of CHASE defamed Plaintiff, and intentionally or with reckless disregard to the truth or falsity thereof, caused major

consumer reporting agencies to publish false, harmful, and derogatory statements or information in Plaintiff's consumer files or investigative consumer reports.

81.    Pursuant to this courts ruling Plaintiff under *protest* only seeks to recover from the defamatory statements or actions done by CHASE and its agents, after 2-23-02. However, Plaintiff does not waive, any of his rights under the laws, any of his rights to seek redress of grievances, or hold Defendants liable for any and all injuries caused to Plaintiff.

82.    CHASE and its agents furnished, made, retain, published, and/or disseminated the false statements about Plaintiff in Plaintiff's Consumer Files and/or Consumer Reports (credit reports), with malice, recklessness, or willful intent to injure Plaintiff and his credit wordiness, good name, reputation, prospective business employment, business opportunities, etc.

83.    As proximate cause of CHASES aforesaid defamation, false light, and the unlawful conduct, extreme and outrageous conduct against Plaintiff, Plaintiff has suffered both extreme and severe *personal injury damages*, and also suffered *economic damages*. (See ¶54, ¶55, and ¶56)

84.    WHEREFORE, Plaintiff, ADONAY LARA prays that this Honorable Court enter a judgment in favor of Plaintiff and against the CHASE for:
   (1) The relief prayed in Paragraph 77 (subsections 1-9), which Plaintiff incorporates or realleges as if fully set forth herein;
   (2) Litigation expenses and cost of suit, and reasonable attorneys' fees;
   (3) Such other or further relief to Plaintiff as this Court may deem just and equitable.

## COUNT IV
### (Unreasonable Intrusion Upon Seclusion [Privacy])

85.    Plaintiff incorporates, or realleges, any and all pertinent facts or allegations in paragraphs 1 through *123*, as if fully set forth herein.

86.    Without any legal justification or valid reason, CHASE repeatedly attempted to collect from Plaintiff the DEBTS and even hired numerous other Collection Agencies (which include but are not limited to the following: *Creditors Interchange, Inc.*; *ALLIED*; *Academy Collection Service, Inc.*; *National Recovery Center, Inc.*; and *FMA Alliance, Ltd.*) to also collect or attempt to collect on the same fully extinguished consumer debts (the DEBTS).

87.    As described in more detail above, from about March of 2001 through about September of 2002, CHASE and its agents (which include but are not limited to the following: *Creditors Interchange, Inc.*; *ALLIED*; *Academy Collection Service, Inc.*; *National Recovery Center, Inc.*; and *FMA Alliance, Ltd.*) individually and/or collectively, within the scope of their employment, intruded into Plaintiff's private zone of solitude or seclusion by making persistent, unwanted

harassing, highly offensive collection telephone calls to Plaintiff at Plaintiff's business telephone line and/or Plaintiff's place of employment.

88.    The aforesaid intrusions were highly offensive or objectionable to a reasonable person, because said telephone calls involved frequent use of profane, obscene, insulting and abusive language against Plaintiff.

89.    The matter upon which said intrusions occurred was private because Plaintiff is a private citizen, he is not a celebrity nor does he hold a public office. The aforesaid intrusions violated Plaintiff's right to be let alone and right to be free to maintain or enjoy Plaintiff's mental peace.

90.    As proximate cause of Defendants and CHASE's agents, aforesaid intrusion upon Plaintiff private zone of seclusion and solitude, and the unlawful conduct, extreme and outrageous conduct against Plaintiff, Plaintiff has suffered both extreme and severe *personal injury damages*, and also suffered *economic damages*. (See ¶54, ¶55, and ¶56).

91.    WHEREFORE, Plaintiff, ADONAY LARA prays that this Honorable Court enter a judgment in favor of Plaintiff and against the CHASE for:
   (1) The relief prayed in Paragraph 77 (subsections 1-9), which Plaintiff incorporates or realleges as if fully set forth herein;
   (2) Litigation expenses and cost of suit, and reasonable attorneys' fees;
   (3) Such other or further relief to Plaintiff as this Court may deem just and equitable.

## COUNT V
### (Intentional Infliction of Emotional Distress)

92.    Plaintiff incorporates, or realleges, any and all pertinent facts or allegations in paragraphs 1 through *123*, as if fully set forth herein.

93.    As described more fully above, Defendants knew and/or should had known that their objective(s) were reasonably illegitimate, and/or unlawful.

94.    Defendants' individually or collectively, either intended that their conduct should inflict severe and extreme emotional distress, mental anguish or knew there was a high provability that their conduct would cause severe and/or extreme emotional distress to Plaintiff.

95.    Defendants' conduct in fact caused severe and/or extreme emotional distress to Plaintiff.

96.    Defendants' conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency, which cannot be tolerated in a civilized community.

97.    Defendants were awarded that Plaintiff was particularly susceptible to emotional distress, mental anguished, etc.

20

98. Defendants individually and collectively *intended* to cause, or recklessly disregarded the provability of causing Plaintiff to suffer both extreme and severe *personal injury damages*, and also suffered *economic damages*. (See ¶54, ¶55, and ¶56).

99. The extreme and/or severe emotional distress, mental anguish, etc., suffered by Plaintiff was and is such that no reasonable person could be expected to endure it.

100. As proximate cause of Defendants and CHASE's agents, aforesaid unlawful conduct, extreme and outrageous conduct against Plaintiff, Plaintiff has suffered both extreme and severe *personal injury damages*, and also suffered *economic damages*. (See ¶54, ¶55, and ¶56).

101. WHEREFORE, Plaintiff, ADONAY LARA prays that this Honorable Court enter a judgment in favor of Plaintiff and against the CHASE for:
   (1) The relief prayed in Paragraph 77 (subsections 1-9), which Plaintiff incorporates or realleges as if fully set forth herein;
   (2) Litigation expenses and cost of suit, and reasonable attorneys' fees;
   (3) Such other or further relief to Plaintiff as this Court may deem just and equitable.

## COUNT VI
### (Consumer Fraud)

102. Plaintiff incorporates, or realleges, any and all pertinent facts or allegations in paragraphs 1 through 123, as if fully set forth herein.

103. CHASE, willfully or maliciously, engaged in deceptive acts or practices against Plaintiff.

104. CHASE, willfully or maliciously, intended for Plaintiff to rely on the deception.

105. The deception occurred in the conduct of a trade or commerce.

106. Plaintiff materially relied on the deception to his detriment.

107. Plaintiff suffered actual damages and that the damages were proximately caused by the deceptive conduct.

108. As proximate cause of CHASE and its agents, aforesaid deceptive practices or acts, the unlawful conduct, the extreme and outrageous conduct against Plaintiff, Plaintiff has suffered both extreme and severe *personal injury damages*, and also suffered *economic damages*. (See ¶54, ¶55, and ¶56).

109. WHEREFORE, Plaintiff, ADONAY LARA prays that this Honorable Court enter a judgment in favor of Plaintiff and against the CHASE for:
   (1) The relief prayed in Paragraph 77 (subsections 1-9), which Plaintiff incorporates or realleges as if fully set forth herein;
   (2) Litigation expenses and cost of suit, and reasonable attorneys' fees;
   (3) Such other or further relief to Plaintiff as this Court may deem just and equitable.

## COUNT VII
### (Common Law Fraud)

110.   Plaintiff incorporates, or realleges, any and all pertinent facts or allegations in paragraphs 1 through *123*, as if fully set forth herein.

111.   CHASE, willfully or maliciously, engaged in deceptive acts or practices against Plaintiff.

112.   CHASE, willfully or maliciously, intended for Plaintiff to rely on the deception.

113.   Plaintiff materially relied on the deception to his detriment.

114.   Plaintiff suffered actual damages and that the damages were proximately caused by the deceptive conduct.

115.   As proximate cause of CHASE and its agents, aforesaid deceptive practices or acts, the unlawful conduct, the extreme and outrageous conduct against Plaintiff, Plaintiff has suffered both extreme and severe *personal injury damages*, and also suffered *economic damages*. (See ¶54, ¶55, and ¶56).

116.   WHEREFORE, Plaintiff, ADONAY LARA prays that this Honorable Court enter a judgment in favor of Plaintiff and against the CHASE for:

   (1) The relief prayed in Paragraph 77 (subsections 1-9), which Plaintiff incorporates or realleges as if fully set forth herein;

   (2) Litigation expenses and cost of suit, and reasonable attorneys' fees;

   (3) Such other or further relief to Plaintiff as this Court may deem just and equitable.

## COUNT VIII
### (Collection Agency Act)

117.   Plaintiff incorporates, or realleges, any and all pertinent facts or allegations in paragraphs 1 through *123*, as if fully set forth herein.

118.   As described in more detail below, pursuant to:  (i) § 9 of the Collection Agency Act, (225 ILCS 425/9); (ii) the decision or controlling precedent in *Sherman v. Field Clinic*, 74 Ill.App.3d 21, 30, (1st Dist. 1979) finding an imply private cause of action in § 9 of the Collection Agency Act, (225 ILCS 425/9); (iii) the decision in *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill.2d 379, 432 N.E.2d 849 (Ill. 1982) favorably cited to *Sherman*, etc.  Plaintiff brings this private cause of action against both ALLIED for engaging in conduct or collection practices which has been made unlawful under § 9 of the Collection Agency Act, (225 ILCS 425/9), and CHASE for having hired ALLIED and numerous other Collection Agencies which, in the course of employment, committed several practices made unlawful under the Act, thus holding CHASE *vicariously* liable for the commission of that particular tort on the same principles as any other.

119.   The Appellate Courts for the State of Illinois for the First Judicial District (henceforth "Appellate Court"), in *Sherman v. Field Clinic*, 74 Ill.App.3d 21, 30, 392 N.E.2d 154, (1st Dist. 1979), has held, **"that a private right of action for damages may be founded on a violation of section 9 of the Collection Agency Act"** (Emphasis added) *Sherman* 74 Ill.App.3d 21 at 30, even when a person or an entity is **"not directly subject to the Act, … nor could [it] be directly liable under the Act"** (Emphasis added) *Ib.*, provided that [it] **"hired a collection agency which, in the course of employment, commits a practice made unlawful under the Act,"** (Emphasis added) *Ib.* Further, the Appellate Court saw and held **"no reason why [said person or entity] cannot be *vicariously* liable for the commission of that particular tort on the same principles as any other."** (Emphasis added) *Ib.*  The Appellate Court supported is finding by referencing or citing

22

to: "*Cf. Restatement (Second) of Torts § 874A, comments f and j (1979)* **(implied tort action should ordinarily be treated similarly to most closely analogous common law torts)."** (Emphasis added) *Ib.*   Further, even The Illinois Supreme Court in *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill.2d 379, 432 N.E.2d 849, 853 (Ill. 1982) has favorably cited to *Sherman* and held:  the Illinois **"courts have continually demonstrated a willingness to imply a private remedy where there exists a clear need to effectuate the purpose of an act.** Kelsay v. Motorola, Inc. (1978), 74 Ill. 2d 172; Boyer v. Atchison, Topeka & Santa Fe Ry. Co. (1967), 38 Ill. 2d 31; Heimgaertner v. Benjamin Electric Manufacturing Co. (1955), 6 Ill. 2d 152; *Sherman v. Field Clinic* **(1979), 74 Ill.App.3d 21, 29;** Montague v. George J. London Memorial Hospital (1979), 78 Ill. App. 3d 298, 301-03." (Emphasis added) *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 432 N.E.2d 849, 853 (Ill. 1982.).

120.    For convenience of the court, Plaintiff has quoted verbatim the controlling precedent of Our Supreme Court which has held:

" "**It is the absolute duty of the circuit court to follow the decisions of the appellate court.**" In re A.A., 181 Ill.2d 32, 36, 228 Ill.Dec. 905, 690 N.E.2d 980 (Ill. 1998); see also *People v. Harris*, 123 Ill.2d 113, 128,122 Ill.Dec. 76, 526 N.E.2d 335 (1988) ("**[i]t is fundamental in Illinois that the decisions of an appellate court are binding precedent on all circuit courts regardless of locale**"). If a circuit court "entertains genuine doubt about the continued vitality of a reviewing court decision," the proper manner in which to proceed in a complex or protracted case is to rule in accordance with existing law and to enter a Rule 304(a) (155 Ill.2d R. 304(a)) finding or certify the question for interlocutory appeal under Rule 308 (134 Ill.2d R. 308). **Because of our system of precedent the circuit court is not, however, free to disregard binding authority.** *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill.2d 533, 539-40, 178 Ill.Dec. 745, 605 N.E.2d 539, 542 (Ill. 1992)." (Emphasis added.) *In re R.C.*, 195 Ill.2d 291, 297-298, 253 Ill.Dec. 699, 745 N.E.2d 1233, 1238 (Ill. 2001).

121.    Section 10 of the Collection Agency Act (225 ILCS 425/10), provides consumers with an opportunity or option to file an administrative complaint with the Department.  However, in no manner does the Collection Agency Act, nor any controlling case law, impose upon any consumer, a duty to exhaust any administrative remedy before a consumer may elect to take an independent private cause of action against *Collection Agency* and against its employer (if certain criteria exists).

122.    Plaintiff incorporates, or realleges, any and all pertinent facts or allegations in paragraphs 42 through 46, and 54, 55, and 56, as if fully set forth herein.

123. As proximate cause of CHASE and its agents, aforesaid unlawful collection practices or acts, the unlawful conduct, the extreme and outrageous conduct against Plaintiff, Plaintiff has suffered both extreme and severe *personal injury damages*, and also suffered *economic damages*. (See ¶54, ¶55, and ¶56).

23

124.    WHEREFORE, Plaintiff, ADONAY LARA prays that this Honorable Court enter a judgment in favor of Plaintiff and against the CHASE for:

(1) The relief prayed in Paragraph 77 (subsections 1-9), which Plaintiff incorporates or realleges as if fully set forth herein;

(2) Litigation expenses and cost of suit, and reasonable attorneys' fees;

(3) Such other or further relief to Plaintiff as this Court may deem just and equitable.

## JURY DEMAND

Plaintiff demands trial by jury on all issues and claims
pursuant to Article I, Section 13, of the 1970, State of Illinois Constitution,
and Section 2-1105 of the Code of Civil Procedure(735 ILCS 5/2-1105),.

Respectfully submitted,

By:    _____
ADONAY LARA
Attorney for Plaintiff (*Pro Se*)


ADONAY LARA
Attorney for the Plaintiff (*Pro Se*)
P. O. Box 1621
Chicago, Illinois 60690
312-719-1108


STATE OF ILLINOIS )
                  ) SS.
COUNTY OF COOK  )

## VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109),the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____
ADONAY LARA
Attorney Certification (Pro se)

24